UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOSEPH E. WALSH and ELIZABETH J. WALSH, ) ) ) ) Plaintiffs, ) ) v. ) ) LARRY E. O'HARA, JR., G.E.A.R.S. and ) AUCTION HOLDINGS AND ) ACQUISITIONS, INC., ) ) Defendant. ) | Case No. 4:16CV1451 HEA |

# **OPINION, MEMORANDUM AND ORDER**

## **Introduction**

This matter is before the Court on Defendants' Motion to Dismiss, [Doc. No. 13]. Plaintiffs oppose the Motion. Defendants have filed a Reply to the Opposition. For the reasons set forth below, the Motion is granted.

Because this case is before the Court on a motion to dismiss, and no jurisdictional discovery has been authorized or conducted, the factual background is necessarily drawn—at least in the first instance—from the factual allegations in Plaintiff's Complaint.

## **Factual and Procedural Background**

Plaintiffs' Complaint alleges the following:

Plaintiffs Joseph E. Walsh and Elizabeth J. Walsh are residents of St. Louis County, Missouri, in this judicial district.

Defendant Larry E. O'Hara, Jr. ("O'Hara")[1] is a resident of Fayetteville, Georgia, trading and doing business as G.E.A.R.S a/k/a German & Exotic Auto Remarketing Specialists ("G.E.A.R.S."). O'Hara engages in or has engaged in the repair, restoration, purchase, brokerage, and/or sale of automobiles and is therefore a merchant under Mo. Rev. Stat. § 150.010.

Defendant G.E.A.R.S. is an unincorporated business with its principal place of business at 370 S. Glynn St., Fayetteville, GA, 30214. G.E.A.R.S. engages in or has engaged in the repair, restoration, purchase, brokerage, and/or sale of automobiles and is therefore a merchant under Mo. Rev. Stat. § 150.010.

Defendant AUCTION HOLDINGS AND ACQUISITIONS, INC. ("AHA") is a Georgia corporation with its principal place of business at 370 S. Glynn St., Fayetteville, GA, 30214. AHA engages in or has engaged in the repair, restoration, purchase, brokerage, and/or sale of automobiles and is therefore a merchant under Mo. Rev. Stat. § 150.010.

Defendants regularly transact business in Missouri, and in this judicial

---

[1] Plaintiffs' Complaint alleges facts "upon information and belief." For the purposes of this motion, the Court will assume the truth of the alleged facts.

district, including, but not limited to, offering automobiles for sale at classic car auctions and/or online.

Defendants regularly transact business with Missouri residents, including offering to sell, purchasing or brokering, and offering to purchase or broker, automobiles with Missouri residents, including residents of this judicial district.

This Court has personal jurisdiction over Defendants under both the Missouri long-arm statute and under the U.S. Constitution because, among other reasons: Defendants, as set forth more fully below, directed numerous false descriptions and misrepresentations and other tortious conduct to Plaintiffs in Saint Louis County, Missouri while knowing that such harmful conduct would be felt by Plaintiffs in Missouri; Defendants misappropriated funds while knowing that the effect of their tortious and wrongful conduct would be felt by Plaintiffs in Missouri; and Defendants have directed telephone and mail communications to Walsh in Missouri with the intent to induce Plaintiffs to take action within the State.

Defendants engage in or have engaged in the repair, restoration, purchase, brokerage, and/or sale of vintage cars, classics, hot rods, muscle cars and exotic automobiles. Defendants claim to be a "luxury and exotic auto remarketing firm specializing in wholesale and retail automotive remarketing solutions as well as direct order acquisitions."

Defendants advertise that "[i]n the retail market, our quality standards and services are simply unmatched. While the majority of retail units are secured via Pre-order, some are offered for sale online and in our facility."

Defendants also advertised on eBay and in *Hemmings,* a prominent and widely distributed Collector car publication, that it "provides prompt shipping / transportation solutions via several trusted vendors throughout the US and overseas."

On March 1, 2016, Defendants sold to Plaintiffs, for $125,000.00 what they described and represented to be a 1959 Mercedes-Benz W121190SL Roadster (the "1959 Mercedes"), having been "completely restored" 20 years ago and having, at all times since, been maintained in climate controlled storage in order to preserve it.

During negotiations for the purchase of the 1959 Mercedes, Defendants made multiple descriptions and representations to Walsh regarding the authenticity, pedigree, low original mileage, provenance, and "completely restored" status of the car. Among other things, Defendants assured Walsh that the car had been "completely restored" 20 years ago and had been kept in a climate controlled environment and out of inclement weather since then, and was in "outstanding" and "mint" condition with what defendants believed to be only 38,000 original miles.

The description of the car on eBay described: "The 548th car built by Mercedes- Benz in 1959, this rare survivor was, in addition to its complete restoration once in its lifetime by its prior collector owner of 20 years, recently professionally refreshed while maintaining original vintage parts. Stored in a climate controlled environment and has not been in any inclement weather since restoration. The car includes additional original parts and accessories, both Solex and Weber Carburetors (Weber Currently Mounted), Two sets of keys complete on vintage MB keyring(s), Owner's Manual, Complete Tool Kit and Wrap, Original Jack and spare as well as a 5th finished to match Wheel Cap."

The eBay description further stated: "This 190 of course runs and drives flawlessly, all gears operate smoothly and all systems/lights/radio, etc. function including the dash, courtesy and clearance lights. The vintage Becker Mexico is operative inclusive of the intriguing auto search/scan operations and is partnered with the original vintage cloth wrapped speaker and housing. In addition to cosmetics the G.E.A.R.S® team has insured the car is mechanically sorted inclusive of all fluids being flushed/changed during inspection/service. The car is on display on the dealership's showroom floor. She of course gets far more attention than any of the exotics on display . . . regardless of make or price point.

The eBay description further stated: "This is a rare find and there are no

issues with this highly sought Mercedes-Benz. Yes, the car, interior, trunk and engine bay is that clean. Aside from age/dust and some limited flaking the underneath maintains is [sic] finish from the prior restoration. In the operations of a well-respected remarketing firm in the European/exotics business for over 18 years this is one of the most perfect 190SL's we have ever experienced at this price point."

The G.E.A.R.S. website, which Walsh viewed prior to purchasing described the car as a 1959 Mercedes-Benz Wl21 190SL Roadster in "Outstanding Condition[]" including "20Yr Old Restoration" and "rare" from the "Reserve Collection."

Defendants further represented that there were only four things that needed attention in order to bring the 1959 Mercedes back to a very high standard following its complete restoration 20 years ago. Those four things were: (1) Chrome windshield surround was pitted and needed re-chroming; (2) Chrome rear-view mirror was pitted and needed to be re-chromed; (3) Chrome gas cap was pitted and needed to be re-chromed; and, (4) Shift knob was original and showed evidence of crazing/cracking.

After purchasing the vehicle, Walsh obtained an evaluation of the 1959 Mercedes and discovered that it was never "completely restored" 20 years ago

as described by Defendants. Walsh discovered evidence indicating that the 1959 Mercedes had not actually ever undergone a complete restoration as described by Defendants. Among other things, Walsh discovered evidence that: The car's frame is in original and not restored condition, and has never been media-blasted to bare metal as a restored car's frame would have been and shows substantial visible rust; the car's body shows rust in at least three locations that have been clumsily hidden by recent paint; the car's wiring is seen to be original in many places which is inconsistent with a "complete restoration"; the car's driver's door is not properly aligned with the body and is recessed in the door opening; the interior regions of both of the car's rear quarter panels/wheel wells (not visible from general exterior inspection) show very poor quality body work with brazed-in scrap metal supports and substantial amounts of Bondo-plastic body filler. This is antithetical to actual restoration-quality body work which would use very little if any filler.

In addition, Walsh discovered that Defendants had made further mis-descriptions regarding the 1959 Mercedes's condition, including his discoveries that: All gages do not work properly, in direct conflict with Defendants' representations. For example, the water gage and fuel gages do not work; and the engine does not start and run seamlessly, in direct conflict with Defendants' descriptions and representations. For example, the engine idles high at over

2000 rpms and the motor knocks under low load.

At no point prior to the sale was Walsh aware of, nor was Walsh made aware of, any of the defects or the nonconformities of the 1959 Mercedes, as outlined herein.

At no point during Walsh's communications with Defendants prior to the sale of the 1959 Mercedes did Defendants make Walsh aware of the defects and the non-conformities of the 1959 Mercedes, as outlined herein.

The Complaint alleges the following claims: Breach of the Contract - Failure to Deliver the Described Product; Rescission/Revocation of Acceptance of Good, (Count I); Breach of the Duty of Good Faith and Fair Dealing, (Count II); Common Law Fraud, (Count III); Fraudulent Concealment/Nondisclosure, (Count IV); Fraudulent Inducement to Contract, (Count V); Negligent Misrepresentation, (Count VI); Breach of the Express Warranties, (Count VII); Breach of the Implied Warranty of Merchantability; Usage of Trade, (Count VIII); and Unjust Enrichment, (Count IX).

Defendants move to dismiss Defendant O'Hara for lack of personal jurisdiction; to dismiss Plaintiff's claim for attorneys' fees; and to dismiss the contract claims, Counts I, II, VII, and VIII.

## Discussion

## Defendant O'Hara

To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of making a prima facie showing that personal jurisdiction exists. *Fastpath, Inc. v. Arbela Tech. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014). A plaintiff's *prima facie* showing "must be tested, not by pleadings alone, but by affidavits and exhibits supporting or opposing the motion." *K–V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011) (internal quotation marks and citation omitted). Although a court must view evidence in a light most favorable to the plaintiff and resolve factual conflicts in the plaintiff's favor, the party seeking to establish the court's personal jurisdiction carries the burden of proof and that burden does not shift to the party challenging jurisdiction. *Viasystems, Inc. v. EBM–Papst St. Georgen GmbH & Co.*, 646 F.3d 589, 592 (8th. Cir. 2011); Epps v. Stewart, 327 F.3d 642, 647 (8th. Cir. 2003).

Defendant O'Hara argues that this Court lacks personal jurisdiction over him because he has no individual connection with Missouri and that the actions he took were in the representative capacity on behalf of G.E.A.R.S. Plaintiffs contend that personal jurisdiction over him is proper under the Missouri long-arm statute and the Due Process Clause of the Fourteenth Amendment because: they did not know he was acting in a representative capacity, rather, personally sold the car; he is the

actual owner of the car; there is no mention on the eBay listing of the corporate or limited liability entities; they cannot confirm that G.E.A.R.S. is registered to do business in the City of Fayetteville, Georgia.

Personal jurisdiction over a defendant represents the power of a court to enter "a valid judgment imposing a personal obligation or duty in favor of the plaintiff." *Viasystems*, 646 F.3d at 592 (quoting *Kulko v. Superior Court of Cal.*, 436 U.S. 84, 91 (1978)). "Personal jurisdiction can be specific or general." *Id.* at 593. "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state...." *Dairy Farmers of Am., Inc. v. Bassett & Walker Intern., Inc.*, 702 F.3d 472, 474–75 (8th Cir. 2012) (quoting *Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1091 (8th Cir. 2008)). In a diversity action, a federal court may exercise specific personal jurisdiction "only if authorized by the forum state's long-arm statute[7] and permitted by the Due Process Clause of the Fourteenth Amendment." *Id.* (quoting *Viasystems*, 646 F.3d at 593).

"'[B]ecause the Missouri long-arm statute authorizes the exercise of jurisdiction over non-residents to the extent permissible under the due process clause,' this court considers 'whether the assertion of personal jurisdiction would violate' due process." *Aly v. Hanzada for Imports & Export Co., LTD*, 864 F.3d 844, 849 (8th Cir. 2017) (quoting *Eagle Tech. v. Expander Americas, Inc.*, 783

F.3d 1131, 1136 (8th Cir. 2015)). Due process requires "'minimum contacts between a defendant and the forum state' so that 'jurisdiction over a defendant with such contacts may not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Downing v. Goldman Phipps, PLLC*, 764 F.3d 906, 912 (8th Cir. 2014) (internal quotation omitted)). "The fundamental inquiry is whether the defendant has 'purposefully availed' itself of the 'benefits and protections' of the forum state, *Burger King Corp. v. Rudzewicz*, 471 U. S. 462, 482 (1985), to such a degree that it 'should reasonably anticipate being haled into court there.'" *Viasystems*, 646 F.3d at 594 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

To determine the sufficiency of a nonresident's contact with the forum state, the court considers: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of [the forum state] in providing a forum for its residents; and (5) the convenience or inconvenience to the parties." *Dairy Farmers*, 702 F.3d at 477 (quoting *K–V Pharm.*, 648 F.3d at 592). "Telephone calls, written communications, and even wire-transfers to and from a forum state do not create sufficient contacts to comport with due process[.]" *Eagle Tech.*, 783 F.3d at 1137.

Plaintiffs focus their personal jurisdiction argument on somewhat of a piercing the corporate veil theory, stating that the Court may exercise personal

11

jurisdiction over O'Hara through the acts as an agent, when in reality, no representative capacity exists.

In support of their position that O'Hara was acting in his individual capacity and was the actual owner of the car, Plaintiffs rely on allegations in their complaint and their beliefs that this was so.

Plaintiffs provide no evidence of a fictitious agency relationship between O'Hara and G.E.A.R.S. Plaintiffs' conclusory statements to the effect that O'Hara was not G.E.A.R.S.' agent do not satisfy its burden to demonstrate he was acting independently. *See, e.g., Affordable Communities of Mo. v. Fed. Nat. Mortg. Ass'n*, 714 F.3d 1069, 1074 (8th Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (finding unpersuasive the plaintiff's use of "labels and conclusions" to establish the defendants' agent-principal relationship).

O'Hara's affidavit and exhibit contradict Plaintiffs' claim that he was not acting as an employee of G.E.A.R.S. In his affidavit, Defendant unequivocally denies ownership of the car, and affirmatively avers he acted solely in his representative capacity in this transaction. Plaintiffs provide no evidence to controvert this affidavit. In that O'Hara has no personal connection with the State of Missouri, the motion to dismiss for lack of personal jurisdiction is well taken.

**Attorneys' Fees**

The parties agree that ordinarily, each side, unless authorized by law, bears its own attorneys' fees. Plaintiff presents nothing at this juncture to demonstrate this case to be of the type where the Court may, in its discretion, award fees in favor of Plaintiffs. The request for fees will be stricken, without prejudice to refiling, if appropriate, at a later stage of this litigation.

**Counts I, II, III, VII, and VIII**

Plaintiffs' Counts I, II, III, VII, and VIII state claims for breach of contract and breach of warranty. Plaintiffs argue that a contract does exist, even though they failed to attach the contract to the Complaint. They seek leave to file an Amended Complaint to do so. The Court agrees that as currently before the Court, Plaintiffs have failed to satisfy the requirements necessary to state a claim for breach of contract and breach of warranties. Plaintiffs merely allege there was a contract and that they were given certain warranties, but fail to set forth sufficient facts to establish that they have a plausible claim against Defendants. Plaintiffs are strongly admonished to specify the terms of the contract at issue, the warranties upon which they rely and the breach thereof. Mere conclusory statements that a contract exists and there was a breach of a contract are insufficient to overcome a Rule 12(b)(6) challenge.

**Conclusion**

Plaintiffs have not carried their burden of establishing a prima facie case that federal courts in Missouri may properly assert personal jurisdiction over Defendant O'Hara. As a result, the exercise of personal jurisdiction over him is not consistent with the requirements of the Missouri Long Arm Statute and the Due Process Clause.

Likewise, Plaintiffs have not established that they would be entitled to attorneys' fees merely for the asking.

Finally, Plaintiffs' breach of contract and warranties claims fail to state a claim upon which relief may be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant O'Hara's motion to dismiss for lack of personal jurisdiction, [Doc. No. 13] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' complaint against O'Hara is dismissed for lack of personal jurisdiction.

**IT IS FURTHER ORDERED** that Plaintiffs' claim for attorneys' fees is stricken, without prejudice.

**IT IS FURTHER ORDERED** that Counts I, II, III, VII, and VIII are dismissed, without prejudice.

**IT IS FURTHER ORDERED** that Plaintiffs are given leave to file an Amended Complaint within 14 days from the date of this Opinion, Memorandum

and Order.

Dated this 28th day of March, 2018.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE